UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:12-CR-463 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| FREDERICK VERNON WILLIAMS, | |
| Defendant(s). | |

Presently before the court is **defendant Denise William's motion in** *limine* for admission of IQ testimony at trial. (Doc. # 500). The government filed a response in opposition (doc. # 502), and Ms. Williams filed a reply. (Doc. # 516).

I.  **Background**

On May 20, 2014, the government filed a third superseding indictment charging Denise Williams and three co-defendants with 34 counts relating to their alleged scheme to fraudulently procure United States passports, unemployment benefits, and Nevada identification cards. Denise Williams faces charges for theft of government money in violation of 18 U.S.C. §§ 2 and 641; making a false citizenship claim in violation of 18 U.S.C. § 911; conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1341 and 1349; and mail fraud in violation of 18 U.S.C. § 1341. Denise Williams is proceeding to trial along with co-defendants Fredrick Vernon Williams (her husband),[1] Jacqueline Louisa Gentle, and Carolyn Willis-Casey.[2] Trial is currently scheduled to begin January 4, 2016. (Doc. # 589).

---

[1] For the purposes of this order, any reference to "Williams" or "defendant Williams" refers to defendant Denise Williams.

[2] A fourth co-defendant, Deon Gentle, pled guilty before this court on April 30, 2013. (Doc. # 65). The court sentenced him on July 29, 2013, to time served per count to run concurrent with three years (total) of supervised release. (Doc. # 111).

**James C. Mahan**
**U.S. District Judge**

1  Denise Williams' motion *in limine* seeks to admit the testimony of Dr. John Paglini
2  regarding the estimated intelligence quotient level ("IQ score") of the defendant. The government
3  opposes the admission of this evidence.

4  **II.     Legal Standard**

5  "The court must decide any preliminary question about whether . . . evidence is
6  admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court
7  can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial
8  evidence. *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009); *Brodit v. Cambra*, 350
9  F.3d 985, 1004-05 (9th Cir. 2003).

10  "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the
11  practice has developed pursuant to the district court's inherent authority to manage the course of
12  trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude
13  or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d
14  721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit
15  impeachment evidence under Federal Rule of Evidence 609).

16  Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler*
17  *Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th
18  Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test
19  and we will uphold its decision absent clear abuse of discretion.").

20  "[I]n limine rulings are not binding on the trial judge [who] may always change his mind
21  during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*,
22  469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence
23  unfolds in an unanticipated manner).

24  **III.    Discussion**

25  First, the court notes that Ms. William's notice to introduce the mental condition of
26  defendant was not timely filed within the time allowed for pretrial motions. *See* FED.R.CRIM.P.
27  12.2(b). Ms. Williams concedes that the motion is not timely, but argues that the court should
28  consider it because the government had presumptive notice of the issue being raised beginning

**James C. Mahan**
**U.S. District Judge**

1  when Ms. William's filed her motion for a competency evaluation. (Doc. # 325). Defendant argues
2  further that establishing Ms. William's IQ took a long time, and defense could not determine
3  whether to seek admission of the evidence until the IQ was established. The government's expert
4  witness' report, in part the basis for this motion, is dated April 27, 2015. The motion itself was
5  filed June 11, 2015. The court finds that the motion was filed within a reasonable period of time
6  after defense counsel received the necessary evaluations to form the basis for the motion. Good
7  cause appearing, the court will allow for the late filing. *See* FED.R.CRIM.P. 12.2(b).

8  Ms. Williams moves the court to allow the testimony of the government's expert witness,
9  Dr. John Paglini, regarding her estimated IQ level. Ms. Williams argues that her low IQ score,
10 estimated at 59 by her own expert witness, Dr. Mark Chambers, and 64 by Dr. Paglini, is
11 admissible evidence that she lacked the necessary *mens rea* to commit the crimes with which she
12 is charged. (Doc. # 500 at 3). Defendant also argues that the evidence mitigates her culpability.
13 (Doc. # 500 at 4).

14 Ms. Williams asserts that she does not intend to present the evidence to show "diminished
15 capacity or some type of mental illness that affects an understanding of right or wrong." (Doc. #
16 500 at 3). She argues instead that the evidence will show the overwhelming influence of Ms.
17 William's husband and co-defendant, Frederick Williams, over defendant. Consequently, she
18 argues that her IQ is a crucial aspect of determining whether, in light of her husband's controlling
19 conduct, she had the required *mens rea* to commit the crimes she is charged with. (*Id.*).

20 Ms. Williams fails to cite convincing legal authority supporting a defense that relies on
21 evidence of some combination of co-defendant control and low IQ to support a finding that a
22 defendant lacked the requisite *mens rea* to commit a crime. Ms. Williams cites two Supreme Court
23 cases, *Atkins v. Virginia* and *Tennard v. Dretke,* for the proposition that impaired mental
24 functioning is inherently mitigating and affects both *mens rea* and culpability. *See* 542 U.S. 274,
25 2876 (2004); 536 U.S. 304, 316 (2002). In its opposition, the government correctly points out that
26 both *Atkins* and *Tennard* are capital punishment *habeas* cases, in which the question of IQ score
27 admissibility was raised during the penalty phase of the case. *See Tennard,* 542 U.S. at 277; *Atkins,*
28 536 U.S. at 308. Here, Ms. Williams seeks to offer the evidence during the guilty or fact-trying

**James C. Mahan**
**U.S. District Judge**

phase of the case. *Atkins* and *Tennard* do not discuss the admissibility of such evidence during the guilt phase of a criminal case and do not support Ms. William's motion.[3] *Id.*

Similarly, defendant cites *Greene v. Lambert* for the proposition that expert testimony is admissible to show that the defendant was not able to fully perceive the nature and quality of the act. *See* 288 F.3d 1081, 1089. Ms. Williams suggests that, in light of *Greene*, expert testimony bearing on low IQ directly constitutes a defense against a *mens rea* requirement. (*See* doc. # 500 at 4). However, *Greene* involves a defendant who sought to present evidence of a mental illness, dissociative identity disorder, and makes no mention of IQ. *See generally Greene,* 288 F.3d 1081. The analysis in *Green* focuses largely on whether the disorder was accepted as a mental illness within the scientific community, and not on its actual admissibility because the defendant in *Greene* sought to use the evidence as part of an insanity defense. *Id.*

The cases cited in Ms. William's motion speak broadly to the admissibility of evidence of mental capacity as mitigating evidence of culpability in determining the penalty for the crime and as the basis for a diminished capacity or insanity defense. *Greene* also holds that the defendant must be allowed to testify as to the details of his or her mind state during commission of the accused crime. No case, however, addresses the issue of whether defendant can offer expert testimony of the defendant's IQ to establish that defendant is not generally capable of forming the requisite *mens rea* to commit the crime, absent a proper diminished capacity defense.

In her reply, defendant points to an additional Ninth Circuit case, which she claims supports her contention that low IQ is a legal defense against the *mens rea* element of the crime. (*See* doc. # 516 at 2–3). In *United States v. Twine,* the court held that diminished capacity evidence is admissible for purposes of proving that the defendant did not possess "the *ability* to attain the culpable state of mind which defines the crime." 853 F.2d at 678. The defendant in *Twine* sought to present evidence of diminished capacity in the form of an actual mental illness, a schizoaffective disorder. *Id.* at 677–78. Again, the case does not address the issue of whether evidence of low IQ is admissible to prove that defendant lacked the necessary *mens rea*. *Id.* Moreover, the defendant

---

[3] The government indicated it will not oppose the admission of IQ evidence during sentencing for Ms. Williams if she is convicted. The court finds that the evidence would be acceptable at that stage of the proceedings.

1  in *Twine* used a diminished capacity defense—Ms. William's motion indicates she does not intend
2  to use this evidence for that purpose. (Doc. # 500 at 3).

3  "Evidence which is not relevant is not admissible." FED. R. EVID. 402. Even if evidence is
4  relevant it "may be excluded if its probative value is substantially outweighed by the danger of
5  unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue
6  delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.
7  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would
8  be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R.
9  Evid. 401.

10  District courts have broad discretion to exclude expert testimony that is "not offered as part
11  of an insanity defense or to negate the mens rea element of a crime." *United States v. Baxt,* 74 F.
12  Supp. 2d 436, 441 (D.N.J. 1999), aff'd, 265 F.3d 1057 (3d Cir.2001) (citing *United States v.*
13  *Bennett,* 161 F.3d 171, 182 (3d Cir.1998); *United States v. DiDomenico,* 985 F.2d 1159, 1163 (2d
14  Cir.1993); *United States v. Erksine,* 588 F.2d 721, 722 (9th Cir.1978)). Further, "[t]he burden that
15  must be met for expert psychiatric testimony to be admitted is a substantial one" that "falls squarely
16  on the defendant." *Baxt,* 74 F. Supp. 2d at 441.

17  There are no Ninth Circuit opinions that explore the boundaries of the use of psychological
18  testimony to negate the *mens rea* element. The Third Circuit *has* held, however, that expert
19  psychological testimony can be admitted to negate the mens rea element of an offense, albeit in
20  limited circumstances. In *United States v. Pohlot,* the Third Circuit determined that evidence of a
21  mental disease or defect is not prohibited by the Insanity Defense Reform Act of 1984 ("IDRA")
22  if it serves to negate the mens rea element of a criminal statute. *Pohlot,* 827 F.2d at 897; *see also*
23  *Twine*, 853 F.2d at 679 (agreeing with *Pohlot*'s holding that psychiatric evidence of mental
24  condition is admissible to negate mens rea).

25  However, the court warned that "the strict use of psychiatric evidence to negate mens rea
26  may easily slide into wider usage that opens up the jury to theories of defense more akin to
27  justification." *Id.* at 905. In light of this "strong danger of misuse" district courts "should admit
28  evidence of mental abnormality on the issue of mens rea only when, if believed, it would support

James C. Mahan
U.S. District Judge

- 5 -

1  a legally acceptable theory of mens rea." *Id.* at 905–06. The Third Circuit distinguished between admissible evidence that truly negates mens rea and inadmissible evidence going toward "diminished capacity" and "diminished responsibility," which are defenses of justification or excuse. *Id.* at 905.

The government argues that the IQ evidence is irrelevant, will cause confusion of the issues, mislead the jury, and create undue delay. Ms. Williams responds that the evidence is relevant to her defense strategy because she plans to use it to negate the *mens rea* element of her charges.

The court finds that the evidence is not relevant to Ms. William's defense during the trial phase of this matter. Ms. Williams argues that she does not seek to present the evidence "to show diminished capacity or some type of mental illness that affects an understanding of right or wrong," but instead to show that she lacked the *mens rea* necessary to commit the crimes charged. (Doc. # 500 at 3). Ms. William's reliance on *Greene* and *Twine* as authority that evidence of IQ score is admissible to negate the *mens rea* element of the charged crimes is misplaced.

In *Twine*, the evidence was being offered for a diminished capacity defense, specifically to show that the defendant had a schizoaffective disorder that might prevent him from appreciating the "quality or wrongfulness" of the act. *Twine*, 853 F.2d at 681. Here, the defense explicitly states it will not use the evidence to such an end. In fact, the evidence defendant seeks to admit, Dr. Paglini's competency evaluation, precludes such use when it concludes that "from a *mens rea* perspective, there is no psychological or neurological impairment that would have resulted in Mrs. Williams not understanding the crime." (Doc. # 500 at 25, exh. 2).

The only binding authority Ms. Williams has presented that holds that *any* mental illness evidence is admissible as a *mens rea* defense is in the context of a diminished capacity defense. *See Twine*, 853 F.2d at 681. Ms. Williams unequivocally states that she has no intention of making a diminished capacity defense. Moreover, even the limited authority from other circuits justifying use of psychological evidence to negate the *mens rea* element does not discuss evidence of IQ score.

**James C. Mahan**
**U.S. District Judge**

- 6 -

Thus the evidence is not relevant to any recognized defense to the charges against Ms. Williams. Indeed, the evidence she seeks to admit concludes that "no psychological or neurological impairment that would have resulted in Mrs. Williams not understanding the crime" exists. (Doc. # 500 at 25, exh. 2). Any use of the evidence to suggest otherwise would be misleading and confusing to the jury, who may perceive the evidence to be in the nature of a legitimate defense like insanity or diminished capacity. The court will therefore deny Ms. William's motion. The defendant is precluded from presenting evidence of her low IQ score to negate the *mens rea* elements of her charges during the trial phase of this matter.

### IV.  Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Denise William's motion in *limine* for admission of IQ testimony at trial (doc. # 500) be, and the same hereby is, DENIED.

DATED December 29, 2015.

                                                                   _____
                                                                   UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**